# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

CAZIJA BIBEROVIC,          )
                                        )
        Plaintiff(s),         )
                                        )
        vs.                )     Case No. 4:20 CV 915 SRW
                                        )
ANDREW M. SAUL,[1]      )
Commissioner of Social Security   )
Administration,         )
                                        )
        Defendant(s).      )

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF No. 12. Defendant filed a Brief in Support of the Answer. ECF No. 19. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

## I.    Factual and Procedural Background

On June 22, 2016, Plaintiff Cazija Biberovic protectively filed an application for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.*[2] Tr. 133, 305-06.

---

[1] At the time this case was filed, Andrew M. Saul was the Commissioner of Social Security. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

[2] Plaintiff previously filed an application for DIB and supplemental security income with the Social Security Administration. After being denied on initial consideration, an Administrative Law Judge found Plaintiff to not be

Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 118-32, 164-68, 171-72.

Plaintiff and counsel appeared for an initial hearing on May 15, 2018. Tr. 85-117. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. On February 13, 2019, Plaintiff and counsel appeared for a supplemental hearing, in which Plaintiff and vocational expert ("VE") James E. Israel testified. Tr. 49-83, 431-32. On the same date as the supplemental hearing, Plaintiff amended her alleged onset date to December 18, 2015. Tr. 326.

On June 14, 2019, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. Tr. 26-47. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. On June 8, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-7. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to

---

disabled from July 6, 2012, her alleged onset date, to the date of the opinion, August 21, 2014. Tr. 134-55. The Appeals Counsel denied her request for review. Tr. 156-61.

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment . . . which significantly limits [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting 20 C.F.R. § 416.920(c)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.

2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If the ALJ determines the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged amended onset date of December 18, 2015 through her date last insured of December 31, 2018. Tr. 32. Plaintiff has the following severe impairments: history of coronary artery disease, hypertension, osteoarthritis of the left shoulder with acromial tearing, depression, anxiety, post-traumatic stress disorder, and history of psychosis. *Id.* Plaintiff did not have an impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 32-35. The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the [Plaintiff] can never climb ropes, ladders or scaffolds; occasionally stoop, kneel, crouch and crawl; never reach overhead with left (non-dominant) upper extremity. She can lift/carry no more than 10 pounds

using left (non-dominant) upper extremity alone; she should not do repetitive lifting with left (non-dominant) upper extremity; however, she can lift/carry 20 pounds using right (dominant) upper extremity alone or with left (non-dominant) upper extremity as helper. There are no limits using the right (dominant) upper extremity, and the [Plaintiff] must avoid all exposure to unprotected heights. Finally, the [Plaintiff] is limited to simple, routine, and repetitive tasks consistent with a specific vocational profile of one or two and is limited to occasional interaction with the public, co-workers and supervisors.

Tr. 35-40.

The ALJ found that Plaintiff was unable to perform her past relevant work as a server. Tr. 40. The ALJ further found Plaintiff was born on March 26, 1972, and was a younger individual age 18-49, on the date last insured. *Id*. The ALJ determined the transferability of job skills was not material to the determination of disability because, using the Medical-Vocational Rules as a framework, it supported a finding that the Plaintiff was "not disabled," whether or not she had transferable job skills. *Id*. Relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as product inspector (*Dictionary of Occupational Titles* ("*DOT*") No. 529.687-186); packer (*DOT* No. 920.685-026); and production worker (*DOT* No. 691.685-018). Tr. 41-42. The ALJ concluded Plaintiff was not under a disability from December 18, 2015, through December 31, 2018, the date last insured. Tr. 24.

**IV.    Discussion**

Plaintiff challenges the ALJ's decision on two grounds: (1) the RFC was not based on substantial evidence; and (2) the ALJ posed an improper hypothetical to the VE. The Court finds the ALJ's decision is based on substantial evidence in the record as a whole, and it is consistent with the Social Security Administration Regulations and case law.

6

**A. RFC Determination**

The ALJ determined Plaintiff had the RFC to perform light work with limitations. Plaintiff challenges the RFC determination as to her left upper extremity only, arguing it was not supported by substantial evidence. Plaintiff asserts the ALJ erred in her failure to: (1) include limitations related to her carpal tunnel syndrome, which was found to be a non-severe impairment; (2) state the weight she attributed to Dr. David Volarich's independent medical examination and include his opinion that Plaintiff should minimize pushing, pulling and traction maneuvers with the left arm; and (3) include Dr. Corey Solman's opinion that Plaintiff should avoid repetitive motions of the left arm and hand. Plaintiff also takes issue with the ALJ's consideration of Dr. Mark Miller's opinions, which were made before the alleged onset date and prior to the finding of a second left shoulder tear. Plaintiff does not argue the ALJ erred in formulating the RFC in relation to her other physical or mental impairments, including history of coronary artery disease, hypertension, depression, anxiety, post-traumatic stress disorder, or history of psychosis.

In response, the Commissioner argues the ALJ properly determined Plaintiff's RFC because the medical record supports her ability to perform a range of light work with limitations. The Commissioner cites to treatment notes indicating progress with her left-shoulder injury, normal physical examinations, ability to perform various daily activities, and non-compliance with suggested treatment.

The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184 (July 2, 1996). "[A]

claimant's RFC [is] based on all relevant evidence, including the medical records, observations by treating physicians and others, and an individual's own description of his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (quotation and citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Nonetheless, there is no requirement that an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Additionally, an ALJ is not limited to considering only medical evidence in evaluating RFC. *Cox*, 495 F.3d at 619; *see also Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [plaintiff] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). The ALJ may consider a plaintiff's daily activities, subjective allegations, and any other evidence of record when developing the RFC. *Hartmann v. Berryhill*, No. 4:17-CV-002413 SPM, 2018 WL 4679737, at *6 (E.D. Mo. Sept. 28, 2018) (citing *Cox*, 495 F.3d at 619-20). Although the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Cox*, 495 F.3d at 620; 20 C.F.R. §§ 416.927(e)(2), 416.946.

Plaintiff bears the burden of proving his RFC. *See Moore*, 572 F.3d at 523. Ultimately, a plaintiff is responsible for providing evidence relating to her RFC, and the Commissioner is responsible for developing the plaintiff's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the plaintiff] get medical reports from [the plaintiff's] own medical sources." *Turner v. Saul*, No. 4:18-CV-1230 ACL, 2019 WL 4260323, at *8 (E.D. Mo. Sept. 9, 2019) (quoting 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).

1. **The ALJ did not err in analyzing Plaintiff's carpal tunnel syndrome**

Plaintiff argues the ALJ erred by failing to include limitations related to her left carpal tunnel syndrome. The record shows Plaintiff was diagnosed with carpal tunnel syndrome in December of 2016. Tr. 1571, 1759. The ALJ acknowledged Plaintiff's diagnosis and treatment, which included a wrist splint, naproxen, and gabapentin. Tr. 32, 38-39. The ALJ found Plaintiff's left carpal tunnel syndrome to be a non-severe impairment because the medical record lacked evidence of "ongoing treatment, particularly more aggressive treatment, or notable work-related functional limitation." Tr. 32. In making this determination, the ALJ considered Plaintiff's ability to "independently engage[] in activities that require manipulative ability, such as eating, bathing, grooming, driving, shopping (i.e., handling items, food, grooming tools and steering)." *Id.*

"An impairment or combination of impairments is not severe if it does not significantly limit [a plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Where an impairment is effectively controlled by medication it "vitiates against finding that the impairment is severe." *Ridenour v. Colvin*, 2014 WL 293877, at *2 (W.D. Mo. 2014) (citing *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011)).

Here, Plaintiff's medical record spans over 1,300 pages, but, as the ALJ notes, the record is devoid of any disabling symptoms related to left carpal tunnel syndrome. To the contrary, on April 12, 2016, a physical examination revealed "[f]ast finger movements intact bilaterally." Tr. 1497. On February 2, 2017, Plaintiff's carpal tunnel syndrome was described as "mild." Tr. 1339. An independent medical examination performed on June 4, 2018, described Plaintiff to have "fair" grip and strength, full range of motion in the wrist and joints, "some" thumb joint tenderness, and "negative Tinel's sign and negative Phalen's test." Tr. 1748-49. Bilateral wrist X-rays from the same date revealed "no fractures or dislocations, or any apparent carpal

instabilities." Tr. 1749. On April 11, 2018, Plaintiff complained of numbness in her hands, which her treating provider thought might be due to a vitamin deficiency. Tr. 1586, 1594. On the same day, a physical examination of her musculoskeletal system revealed "normal" findings. Tr. 1591.

As the ALJ noted, Plaintiff had the ability to perform a variety of functions requiring manipulative activity. For example, Plaintiff testified at both of her hearings that she has a driver's license and can drive, and in her Function Report, she stated she can go out alone. Tr. 57, 103, 370. Plaintiff further reported she can dress herself, although it can hurt, and she can bathe herself using her right arm. Tr. 368. Plaintiff testified she is able to shop for clothing, and occasionally shops for clothes two or three times a week. Tr. 56, 69. Plaintiff is also able to shop at the grocery store and stated her only limitations to shopping alone were a result of her memory issues because she forgets what to buy, buys too much, or buys too little. Tr. 102-03.

Plaintiff states in a conclusory fashion that the ALJ did not include any limitations regarding her left carpal tunnel syndrome but has not presented or cited to any evidence to show she suffers from specific symptoms which are limiting. Thus, the ALJ did not err in finding Plaintiff's carpal tunnel syndrome was non-severe in light of the insufficient medical evidence supporting a finding that it was a severe impairment.

### 2. The ALJ's RFC determination is supported by substantial evidence

Plaintiff argues the ALJ "failed to properly formulate a residual functional capacity with appropriate limitations regarding [Plaintiff's] left upper extremity[.]" ECF No. 12, at 15. In making this argument, Plaintiff asserts the ALJ "fail[ed] to encapsulate the undisputed opinions of Dr. Volarich (limiting use of the left arm away from the body and minimize pushing, pulling and traction maneuvers with the left) and Dr. Solman (avoiding repetitive motions of the left arm and hand, not more than 15 times per hour)." *Id.* at 14. Although the Court has reviewed the

10

underlying record in its entirety, the Court will limit its discussion of the evidence to the ALJ's RFC assessment of Plaintiff's left upper extremity impairments in evaluating this issue.

The ALJ determined Plaintiff had the RFC to perform light work, but could not reach overhead, lift more than ten pounds, or engage in repetitive lifting with her left non-dominant upper extremity. The ALJ found Plaintiff had no limitations in her right upper extremity, and she could lift or carry up to twenty pounds using her right upper extremity alone, or with her left upper extremity as a helper. Tr. 35. In formulating Plaintiff's RFC, the ALJ considered her testimony at the May 15, 2018 and February 13, 2019 hearings, in which she testified to limited use of her left arm and pain when she raises her left arm to shoulder level. Tr. 36, 60-63, 66-67, 94-98, 103-05. Notably, during the May 15th hearing, the ALJ commented on the record that she had "been watching [Plaintiff] and her arm [and] she's had it in all different locations. So it does bend and things like that, so that's consistent with the objective evidence from the other sources in the – in the records that it's not as limited." Tr. 115.

Within the decision, the ALJ included a brief summary of the injury which caused Plaintiff's left upper extremity issues and the immediate subsequent treatment. Tr. 36. On December 14, 2013, Plaintiff tripped and fell on her left side while she was working as a banquet server. Tr. 10, 36, 481, 507, 764, 788, 802-03, 1235, 1356. On December 23, 2013, Plaintiff returned to work with restrictions. Tr. 656. A January 31, 2014 MRI of Plaintiff's left shoulder showed tendinopathy and a partial supraspinatus tear. Tr. 686-87, 799-800, 1241. Plaintiff was given a cortisone injection and directed to undergo physical therapy. Tr. 794, 1241. On April 1, 2014, after non-compliance with the physical therapy directive, Plaintiff appeared for arthroscopic left shoulder surgery. Tr. 36, 475-95, 757-59, 788, 1241. Post-operative notes from

her surgeon, Dr. Mark Miller, indicated there was "no evidence whatsoever of a loss of range of motion under anesthesia." Tr. 475.

On July 29, 2014, Plaintiff underwent a second arthroscopic left shoulder surgery with biceps tendon debridement. Tr. 36, 127, 453-74, 755-56, 1241. Within the operative findings, Dr. Miller again noted Plaintiff had "no evidence of marked loss of range of motion" when under anesthesia. Tr. 453. The ALJ noted Dr. Miller did not assign her a limitation in reaching in other directions, and the medical record reflected Plaintiff was permitted to return to work with no restrictions on September 2, 2014, despite her unexplainable complaints of pain. Tr. 40, 760-63, 766. Dr. Miller noted she had a full range of motion "if she allows" and opined her shoulder issues were "treated fully." Tr. 762, 826. At subsequent doctor appointments, Plaintiff denied musculoskeletal issues. Tr. 1037, 1041, 1052, 1056, 1106, 1110, 1127, 1132, 1222. On November 2, 2016, Plaintiff was observed to have "normal and equal range of movement of upper and lower extremities." Tr. 38, 1309. The ALJ acknowledged the aforementioned records were prior to Plaintiff's alleged onset date of December 18, 2015.

Plaintiff challenges the ALJ's inclusion of Dr. Miller's treatment notes within the decision because "those opinions were prior to the amended alleged onset date and prior to the finding of a second tear in the [Plaintiff's] left shoulder." ECF No. 12, at 15. Plaintiff provides no legal authority for this argument, and the Court finds the ALJ's consideration of records prior to the alleged onset date is not reversible error. It is well established that an ALJ can consider prior file evidence when evaluating an open disability claim. *See Burks-Marshall v. Shalala*, 7 F.3d 1346, 1348 n.6 (8th Cir. 1993) ("Evidence from the record of a prior claim may be relevant to a claim of disability with a later onset date."). Evidence from the administrative record in previously denied claims has been used to both discount and support pending disability claims.

12

*See, e.g., Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007) (court rejects plaintiff's contention

that ALJ should not consider evidence from prior file, because it predates alleged onset date);

*Vandeboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (court rejects plaintiff's assertion that

ALJ could not consider medical opinions from prior file showing normal cognitive functioning

even though they were dated before the alleged onset date); *Kriebaum v. Astrue*, 280 Fed. Appx.

555, 558 n.4 (2008) (court rejects plaintiff's assertion that ALJ should not use medical records

before alleged onset date). *See also Kemmet v. Berryhill*, Case No. 1:16-CV-34 PLC, 2017 WL

3642028, at *7-10 (E.D. Mo. Aug. 24, 2017) (case remanded because ALJ erred by failing to

consider doctor's opinions in the record that were dated two years prior to alleged onset date);

*Western v. Berryhill*, Case No. 1:16-CV-48 JAR, 2017 WL 1407118, at *3-4 (E.D. Mo. Apr. 20,

2017) (court remands case because ALJ failed to consider opinion evidence in the record dated

before the alleged onset date).

After appropriately discussing the background of Plaintiff's injury, the ALJ addressed

three records submitted by non-treating physician Dr. Volarich, which included: (1) a ten-page

independent medical examination report, dated May 27, 2015; (2) a one-page "Addendum" to

the independent medical examination, dated February 11, 2016; and (3) a one-page "2nd

Addendum" to the independent medical examination, dated August 10, 2017. Tr. 37, 809-19,

1503, 1504.

The Court notes the May 27, 2015 independent medical examination was performed for

the sole purpose of evaluating whether Plaintiff had reached "maximum medical improvement"

for her then-pending workers' compensation claim. Tr. 809-19. Within the report, Dr. Volarich

indicated he reviewed Plaintiff's medical record, performed a physical examination limited to

her upper and lower extremities, and interviewed her regarding her medical history and

symptoms. Tr. 810. Dr. Volarich determined Plaintiff had "a 40% permanent partial disability of

the left upper extremity" but could "perform most activities for self-care." Tr. 816, 818. As to the

ability to work, Dr. Volarich opined the following limitations:

> 1. She should limit overhead use of the left arm and prolonged use of the left arm
> away from her body especially above chest level.

> 2. She should minimize pushing, pulling, and particularly traction maneuvers with
> the left upper extremity.

> 3. She should not handle weight greater than about three pounds with her left arm
> extended away from the body to overhead, and limit these tasks to as needed or as
> tolerated.

> 4. She can handle weight to tolerance with the left arm dependent assuming
> proper lifting techniques, but in general, I would recommend 10 pounds with the
> left arm alone.

> 5. She is advised to pursue an appropriate strengthening, stretching, and range of
> motion exercise program daily for her shoulders to tolerance.

Tr. 818.

On February 11, 2016, Dr. Volarich submitted an addendum to his initial independent

medical examination as a result of his review of a September 2015 "Report of Psychological and

Vocational Rehabilitation Evaluation" written and submitted by Vincent Stock "to assist in her

Missouri Workers' Compensation claim." Tr. 821-33, 1503. Dr. Volarich wrote "[a]fter a review

of that assessment, it is [his] opinion that [Plaintiff] is permanently and totally disabled as a

direct result of the work related injury of December 13, 2013 in combination with her preexisting

medical conditions and psychiatric disorders." Tr. 1503. Within Mr. Stock's Evaluation, he

indicated he was "not a physician," and his "impairment rating only takes into account the

psychological impairment." Tr. 832. The Court will not summarize Mr. Stock's opinion herein

because he is a psychologist, and Plaintiff only challenges the ALJ's RFC determination as to her

left upper extremity limitations, not her mental impairments.

On August 10, 2017, Dr. Volarich submitted a second addendum after his review of updated records, including a June 15, 2016 MRI of Plaintiff's left shoulder and a December 5, 2016 treatment note indicating Plaintiff's complaints of arm weakness and sensory change. Tr. 1504. Dr. Volarich cited to his initial independent examination and highlighted that Plaintiff "was not interested in pursuing additional surgery as to her left shoulder" and opined that "a cortisone injection would likely help relieve some of her symptoms." *Id.* He indicated he had no changes to his earlier opinions based on his review of the updated records. *Id.*

Plaintiff argues the ALJ erred by failing to "explain why she does not give weight to Dr. Volarich's opinion." ECF No. 12, at 14. However, the Court finds that after the ALJ summarized Dr. Volarich's submissions, she explicitly indicated she gave "little weight" to his opinion because a "disability determination is an opinion that is reserved for the Social Security Administration Commissioner," and Dr. Volarich's opinion regarding Plaintiff's permanent disability lacked support from other treating and examining records. Tr. 37.

The Court finds no error in the ALJ's assignment of "little weight" to Dr. Volarich's opinion because, as the ALJ noted, such a determination of disability is an issue reserved for the Commissioner. *See, e.g., House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) (a medical opinion, even from a treating physician, that a claimant is disabled or cannot be gainfully employed "gets no deference because it invades the province of the Commissioner to make the ultimate disability determination"). Although an ALJ may consider an examination or opinion that was part of a plaintiff's workers' compensation claim, statements by doctors related to such a claim are not binding on the Social Security Administration. *See Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000); *Loeffler v. Massanari*, 23 Fed. Appx. 605, 606 (8th Cir. 2001) (citing 20 C.F.R. § 404.1504). Furthermore, as discussed below, substantial medical evidence supports the ALJ's

decision that Plaintiff could perform light work, contrary to the opinion of Dr. Volarich. *See Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (holding it is not appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion).

On February 22, 2016, Plaintiff exhibited a "normal [range of motion] of upper and lower extremities." Tr. 1258. On June 10, 2016, a left shoulder X-ray revealed "mild left acromioclavicular joint osteoarthritis." Tr. 1488. On June 15, 2016, an MRI of the left shoulder revealed "high-grade, near full-thickness, articular-sided tear of the left rotator cuff" and "moderate left subacromial-subdeltoid bursitis." Tr. 1477-85. On July 14, 2016, Plaintiff exhibited "normal and equal range of movement of upper and lower extremities." Tr. 1238, 1284. On August 23, 2016, Plaintiff reported no musculoskeletal symptoms. Tr. 1273. On November 2, 2016, Plaintiff complained of "left arm pain in her bones" and numbness. Tr. 1305. Despite these complaints, a physical examination revealed no deficiencies with upper extremity range of motion. Tr. 1309. On December 5, 2016, Plaintiff complained of "9 out of 10" pain in her left arm and shoulder. Tr. 1354. A physical examination found her "notable for mild weakness in Left C7 distribution (tricep, wrist extensors)" with "possible" radiculopathy. Tr. 1358. Plaintiff was prescribed an anti-inflammatory. *Id.* On February 2, 2017, Plaintiff denied joint pains, swelling, or muscle aches. Tr. 1295. On August 28, 2017, Plaintiff presented to Barnes-Jewish Hospital with complaints of chest pain. Tr. 1510. During a physical examination, Plaintiff was described to have the ability to move all extremities with no signs of edema. Tr. 38, 1512. On May 14, 2018, Plaintiff denied musculoskeletal symptoms, muscle aches, and soft tissue swelling. Tr. 1675. On May 17, 2018, Plaintiff was negative for musculoskeletal weakness or arthritis. Tr. 1649.

On June 4, 2018, Plaintiff appeared for an independent medical examination with Dr. Corey Solman. Tr. 38, 1739-55. Dr. Solman examined her left shoulder and indicated she had well-healed arthroscopic portals, mild anterior tenderness, 5/5 internal and external rotation strength, 5/5 abduction strength, no signs of instability of the shoulder, mild tenderness to palpitation along the trapezius muscles, and full cervical spine range of motion. Tr. 38, 1748. Left shoulder X-rays ordered as part of the examination revealed "some mild AC joint narrowing; no glenohumeral joint arthritis, no fractures or dislocations, or tumorous conditions." Tr. 38, 1749. Dr. Solman did not opine that she was totally disabled and, as to her left upper extremity, suggested the following limitations:

> She should avoid doing any overhead lifting with the left arm. She should avoid lifting more than 10 pounds from floor to shoulder level with the left arm. It would likely be beneficial for her to avoid repetitive motions with the left arm and hand, more than 15 times per hour, to avoid aggravating the shoulder. Once again, I cannot explain, on the basis of her work-related injury of December 14, 2013, why her left hand is so weak and why her left thumb has pain. Thus, I would not impose any restrictions with regards to the left hand or thumb[.]

Tr. 1754.

Along with the medical record, the ALJ considered Plaintiff's activities of daily living. Plaintiff had a driver's license, was able to drive without restrictions, could go out alone, and shopped up to three times per week. Tr. 56-57, 69, 103, 368, 370. Plaintiff stated she could dress herself, although it hurt, and was able to bathe herself using her right arm. Tr. 368. Plaintiff attributed her inability to cook on memory issues, not manipulation limitations. Tr. 1232-33. Plaintiff also testified she was able to go on international trips and attend a concert. Tr. 69, 98, 106. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility").

17

Plaintiff takes issue with the fact that the ALJ did not include Dr. Volarich's limitation of minimizing pushing, pulling, and traction maneuvers, and Dr. Solman's limitation of avoiding repetitive motions of the left arm and hand for not more than 15 times per hour. ECF No. 12, at 14-15. In making this argument, however, Plaintiff does not cite to any treatment notes from her providers that would support such limitations. Both Dr. Volarich and Dr. Solman were non-treating providers who offered opinions related to her workers' compensation claim. Despite not mirroring their stated limitations, the ALJ considered both of their opinions and incorporated a majority of their limitations in the RFC. Notably, their opined limitations were ultimately consistent with the ALJs determination.

The medical record as a whole, as summarized above, substantially supports the ALJ's RFC determination of light work, but excluding her ability to reach overhead, lift more than ten pounds, and to avoid repetitive lifting with her left non-dominant upper extremity. The ALJ found Plaintiff had no limitations in her right upper extremity, and she could lift or carry up to twenty pounds using her right upper extremity along or with her left upper extremity as a helper. Although the ALJ acknowledged Plaintiff's complaints of left upper extremity pain and reduced range of motion, the ALJ accounted for these disruptions in her RFC by defining specific limitations consistent with the relevant evidence of record.

Based on a careful review of the record, the Court finds the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record as a whole and is not conclusory. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (citing *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)).

**B. Vocational Testimony**

Plaintiff argues the ALJ committed reversible error by posing hypothetical questions to the VE at the supplemental hearing which did not mirror the final RFC determination. Specifically, Plaintiff points to the fact that the ALJ asked the VE whether Plaintiff would be able to perform jobs in the national economy with the limitations of "no direct interaction with the public" and only "casual and infrequent [interaction] with coworkers and occasional interaction with supervisors." Tr. 15-16, 76-77. Whereas, the ALJ's final RFC determination limits Plaintiff to a less restrictive limitation of "occasional interaction with the public, co-workers and supervisors."

The Commissioner does not dispute the ALJ ultimately found Plaintiff to be less limited in her ability to interact with others than what was posited in the hypothetical questions asked at the supplemental hearing. However, Respondent argues the ALJ did not err because "if a [hypothetical] person can perform work involving 'occasional' interaction with the public and co-workers, she can also perform work involving 'no direct interaction with the public,' and 'casual infrequent' interaction with co-workers." ECF No. 19, at 15-16.

An ALJ is required to include only those limitations in a hypothetical to a VE which she finds credible. *Gilbert v. Apfel*, 175 F.3d 602, 604 (8th Cir. 1999); *Sobania v. Secretary of Health Educ. & Human Servs.*, 879 F.2d 441, 445 (8th Cir. 1989); *Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988). The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). Where a hypothetical question precisely sets forth all of a plaintiff's physical and mental impairments, a VE's testimony

constitutes substantial evidence supporting the ALJ's decision. *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (holding a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a plaintiff's limitations); *Wingert v. Bowen*, 894 F.2d 296, 298 (8th Cir. 1990).

When a hypothetical question is more restrictive than the RFC assigned to a plaintiff by an ALJ, the hypothetical is sufficient so long as it encompasses all of the restrictions in the RFC. *Miller v. Astrue*, 233 Fed. Appx. 590, 2007 WL 1452966, at \*2 (8th Cir. 2007) (hypothetical which is more restrictive than the RFC assessment is sufficient so long as it includes all of the impairments that the ALJ found to be substantiated by the record); *Fredrick v. Colvin*, 2016 WL 755647, \*6 (W.D. Mo. 2016) ("[I]f the vocational expert could offer jobs that exist in the national economy under a more restrictive hypothetical, those same jobs would necessarily still apply to [plaintiff's] less-restrictive RFC."); *Graffis v. Colvin*, 2015 WL 5098776, \*2 n.5 (E.D. Mo. 2015) (hypothetical that is more restrictive than the RFC the ALJ found constitutes sufficient evidence, and any discrepancy between the hypothetical and residual functional capacity is harmless error); and *Vann v. Astrue*, 2012 WL 651412, at \*22 n.68 (W.D. Mo. 2012) ("Other differences between the hypothetical question and the RFC assessment do not affect the ALJ's conclusion that Plaintiff could perform other work in the national economy because they involve more restrictive limitations in the hypothetical question than in the RFC assessment.").

Thus, the VE in this case testified that a hypothetical individual with a more restrictive RFC than Plaintiff could perform the jobs of product inspector, packer, and production worker; the ALJ did not err in relying on his testimony to find Plaintiff could also perform those jobs.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Cazija Biberovic's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 28th day of July, 2021.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**